Good morning. Robert Ukele on behalf of the petitioner Bill McClarence and I'd like to reserve five minutes if possible. May it please the court, there are four issues, the three reasons that the EPA gave, basically procedural reasons for denying the petition and then the merits of the petition itself. The first reason the EPA gave was that the petition wasn't detailed enough. And I apologize for misunderstanding that issue in my opening brief. I thought that EPA was saying that you couldn't incorporate by reference, and EPA clarified that that wasn't. But I think that kind of proves my point. It just never crossed my mind that the 11 pages of detailed analysis that Mr. McClarence included in his petition wouldn't be specific enough. It kind of reminds me of when you're explaining something to someone and you're getting really frustrated because they're not listening and you say, well, what do you want me to do, draw you a map? I mean, Mr. McClarence basically drew him a map on page 16 in the brief, and in his petition, he included graphical representations of why the whole Prudhoe Bay facility should be aggregated. I think the difficulty was that your client didn't address the change in position regarding not including the whole Prudhoe Bay. And I think that was the difficulty that the EPA had. Yes, Your Honor. And so there are a couple of responses to that. One is what EPA is actually trying to do is change the playing language of Section 505b-2, which says that EPA has to object if the petition demonstrates that the permit's not in compliance with the Clean Air Act. So that's what it says, that the petitioner's burden is to demonstrate that the permit's not in compliance with the Clean Air Act. The playing language of the statute does not say that petitioner has to demonstrate that the final decision was arbitrary. And so EPA would be violating the playing language to try and create a new standard. Also, EPA would be, if you analogize it to criminal law, EPA would be making both an ex post facto rule and a bill of attainer. It's ex post facto because EPA never told Mr. McLaren that he had to do that before. And it's a bill of attainer because EPA has never used that standard, as far as I'm aware of, in any other Title V petition. Like, EPA submitted 28-J letters on two cases, what I'd call Sierra Club v. Johnson 2, as well as CARE. In both those cases, the EPA did not require the petitioner to explain why the final state agency action or final decision was arbitrary. And, in fact, EPA can't apply that rule on a consistent basis because oftentimes the state hasn't made its final decision at the point at which someone has to submit a petition. And I'll explain that. So with Title V permits, there are actually three steps in the process. There's a draft permit, which the public gets to comment. There's a proposed permit, which goes to EPA. And then there's a final permit. And so what EPA was complaining about is Mr. McLaren not explaining why the rationale included in the final permit was arbitrary. But oftentimes, when the proposed permit comes out, that's when your clock begins to run to petition. And so the final permit is often not issued before the — before your petition is due. And the statute specifically — decision made is what is supposed to comply with the Clean Air Act. Why was it arbitrary for the EPA to require an explanation as to why the final plan violated the Clean Air Act? So, oddly enough, it's not the final permit that must comply with the Clean Air Act. It's the proposed permit. Because, I mean, ultimately, the final permit does have to comply. But what people petition on is a proposed permit. And that's a permit that the state sends to EPA. And then EPA has 45 days to review that. Okay. And then the petitioner's period begins. And actually, it's designed that normally that process should get resolved before the state issues the permit. Okay. In this case, from your perspective, what was the proposed permit that was supposed to comply with the Clean Air Act? Well, in this case, EPA did say that the final permit — they considered the final permit to be the proposed permit. What do you consider to be the proposed permit? I agree with that, Your Honor. Okay. So if the final permit was the one that had the changed aggregation analysis — Mm-hmm. Okay. Then my question is, why would the EPA be arbitrary in requiring that the final permit, the proposed permit, be shown to be violative of the Clean Air Act? That's not — they wouldn't be. But that's not what happened. What EPA complained about is that Mr. McLaren didn't explain why the rationale provided by the State was — didn't explain why that rationale was arbitrary, which is not what the statute requires. I — Well, as I — you know, as I read their decision, it talks about — that he didn't offer an explanation why the State's decision was unreasonable. But they go on from that. They don't stop there. They go on and say, well, he didn't show, really, that there was a flaw, meaning — I took that to mean that he didn't show that there was a violation of the Clean Air Act. Right, Your Honor. So I'm not totally clear. I know the government comes back in their brief and they say, well, it's okay for them to require him to show that the State's decision was unreasonable. But I'm not — in the final analysis, I'm not sure that's what really happened here. They said that he didn't show that the final permit, as Judge — as Judge Rawlinson keeps pointing out, he didn't show why the final decision was — constituted a violation of the Clean Air Act. Right, Your Honor. And it's not enough — what they're saying, I understand, to be saying it's just not enough to point to all the prior stuff, all the prior — you know, the initial permit, the second — the revised permit, and then everything that came in between. So — And they said that's not enough. You've got to show us. You've got to demonstrate to us why there's a violation. Yes, Your Honor. So I'm not totally clear on what their argument is, whether it's just kind of a petty argument that he didn't cite to the page number in which the final permit doesn't aggregate all the emission sources, or whether it's a more substantive. But the 11 pages of detailed analysis do demonstrate that the final permit, which does not aggregate all the emission units at the whole Prudhoe Bay unit, is not — is wrong. That the permit should have said all the emission units need to be aggregated. And EPA, I don't think — I know for a fact they never got to the merits of that. And in their brief, they made clear that they don't want the court to get to the merits of that. So what EPA was either saying is, A, you didn't provide us the page number, you told us that the permit was wrong because it didn't aggregate, that you didn't point to the exact section, or they're saying something different, which is a kind of argument that EPA makes up all the time. Yes, the permit doesn't comply with the Clean Air Act, but it doesn't matter. That's what they're saying. There's a violation in that the permit doesn't aggregate all the units into one major stationary source. And that is not in compliance with the Clean Air Act, but so what? A harmless error kind of argument, or a practical — what's the practical consequences of that? That's what their argument was. If they had gone into the merits and said the 11 pages of analysis, which explains why the aggregation of all the units is necessary, was wrong, then, you know, that would be a step forward. We'd be happy with that in the sense that we'd be getting to the final decision. So it seems like — and I may have the scenario wrong, but they initially started out not requiring at full aggregation. Then they came — then the state came back and required full aggregation. Then they came back and it was like they sort of took a middle ground. There was actually four steps. No aggregation, all aggregation, no aggregation, middle ground. And that middle ground — The middle ground became the final decision, correct? Correct. And the 11 pages in Mr. McLaren's petition explain why that middle ground is wrong, because it explains that there has to be full aggregation, the second approach. And you can't — it has to be one or the other. It has to be full aggregation or not full aggregation. So if you prove that it was required to be full aggregation, then you prove that this middle ground, which appears to be the result of a compromise, a negotiated compromise — What says that it has to be full aggregation or no aggregation? What regulation or case says that? The definition of major stationary source, and we discussed that, basically the merits. So the definition of major stationary source is it has to meet three criteria. It's that it's in the same SIC code, that it's owned and operated by the same person, and that it's adjacent or contiguous. There's no debate, really, about the two of those criteria. But that doesn't equate to full aggregation or no aggregation in this particular case. Before it is judged on a case-by-case basis, right? What Mr. McLaren explained is that all the emission units are contiguous or adjacent. That's begging the question, though. The question is whether they are all contiguous and whether they all should be aggregated. But just to cite that definition does not give us the answer as to whether they must be aggregated. Exactly. That's why Mr. McLaren's provided 11 pages of detailed analysis. For example, this picture shows, which is out of the petition, shows why all the units need to be aggregated, because all the units are interconnected. Or another way of looking at it is to look at EPA. One way that they decide aggregation is a common-sense notion of a plant. So you could look at the Alaska Oil and Gas Commission, and they're obviously someone with expertise, and they decided that the Pudeau Bay unit should be a common-sense notion of a plant. Am I correct in my recollection that this was over 300 miles that we're talking about? That is correct, Your Honor. And the midway approach that they answer, or they had ultimately adopted, was over 30 square miles. So the distance overall doesn't matter, and EPA has said that. And if distance did matter, then their decision would be arbitrary, because they aggregated units that were further apart than some units that they didn't aggregate, and I explain that in the reply brief. Quick question for you. Isn't what happened is your client complained about the first permit that was about to be issued. They went back and made some modifications, and your client stood on the same complaint that he had before, even though he didn't address the modifications. Isn't that what really happened? No, not at all, Your Honor. The final permit does not aggregate all the emission units in the Pudeau Bay unit. Mr. McLaren's argument, detailed argument, is that all the emission units in the Pudeau Bay unit need to be aggregated. So he was complaining about the final permit. He explained why that conclusion is the one that you have to reach, that all the units have to be aggregated. Okay. You wanted to save some time for rebuttal. Yes. You only have 45 seconds. So we're actually over. But let's hear from the other side. May it please the Court. Andrew Doyle with the Department of Justice. I'm joined today by Julie Vergeron with the Environmental Protection Agency and Christy Smith also with the EPA. And when this order was before the EPA administrator, obviously all he had before him was the content of Mr. McLaren's petition. That petition is at pages 75 through 96 of the record. And that's important because that's what controls here, the content of that petition. And I'd like to address three reasons why the EPA reasonably denied that petition, was reasonably not convinced by that petition. The first is that EPA is entitled to Chevron deference when it interprets the ambiguous statutory term demonstrates. The second reason is that the purported demonstration in this case did not compel EPA to overturn the final decision, especially whereas Judge Rawlinson noted that final permit explained the change in position from the draft that Mr. McLaren prefers. And then the third reason is that EPA permissively required a demonstration of unreasonableness as to Alaska's final aggregation decision because we're dealing with a federal-state partnership that is the Clean Air Act and state permitting authorities have some leeway, some discretion to make certain kinds of permitting decisions, including aggregation. Now I'll return to the first issue on Chevron deference. We submitted a couple of Rule 28J letters to this court, and there was also a case from the Second Circuit cited in our brief at pages 31 and 32 of our brief. Those Counsel, your position is that the word demonstrates is ambiguous? That's correct. Now what authority do you rely on to support that argument that the word demonstrates is ambiguous? Three appellate decisions, not from this court, but the Second Circuit case, which is on page 31 and 32 of our brief, and then the two Rule 28J letters that we submitted from the Seventh and Eleventh Circuit say explicitly that EPA is entitled to reasonable, to make a reasonable interpretation of demonstrates because that's the discretionary part of the provision we're dealing with in Title V. We fully acknowledge there's a nondiscretionary part of that provision here that says once a sufficient demonstration is made, EPA must, has no discretion, must object to a permit. But you don't get to that nondiscretionary part unless So how does EPA define demonstrate then? There's not an affirmative definition by EPA either formally or informally for demonstrates, but it's much like aggregation on a case-by-case basis. Well, how can we give deference if there is no definition that's been promulgated by EPA? That's precisely the circumstances in which Chevron deference is appropriate because the Clean Air Act doesn't define demonstrates. Implicitly, Congress is delegating that to EPA to reasonably But usually we have a regulation or something where the agency has filled in the ambiguity by giving a definition. In this case, you're saying we should defer on a case-by-case basis of the flowing definition of demonstrates. That's correct. Often you're correct that notice and comment rulemaking is where EPA is enunciating its interpretations. But the cases that most recent cases on Chevron deference, the Meade case, for example, talk about there's other circumstances like in adjudications where EPA How persuasive is the reasoning? Well, the reasoning is persuasive here and it's reasonable because That gets to the ultimate question under the APA whether or not the EPA's decision was arbitrary and capricious. I fully acknowledge that the two are quite intertwined here because the second reason, as I was mentioning, is the deficient nature of the petition that Mr. McLaren submitted. We heard today that Mr. McLaren is focusing on the 11 pages of detailed analysis he provided to the EPA. Those 11 pages, of course, came from Alaska itself and its draft permit decision. So we don't dispute that there's detail in that. But that does not go to the point of the detail in the final aggregation analysis. And included in that detail of the final aggregation analysis is an explanation for why they're choosing not to go down the full route of aggregating throughout the 300 square mile area here, which just to give your honors a visual, the island of Oahu is 600 square miles. So think half of Oahu. And that's what we're talking. And also Alaska further explained why it decided not to go down the very narrow aggregation path that it started out with. That is just go gravel pad by gravel pad. So that's that's where the deficiency of the permit lies. But, Judge Pius, you also mentioned that EPA mentioned another reason, and that was that there was no identification from Mr. McLaren as to what permit term or condition in the permit itself would be different had Alaska gone down a different aggregation path or one that Mr. McLaren would have preferred. So it was those two reasons that EPA found the petition insufficient. And one of the arguments that was made was that it was unclear whether or not you wouldn't allow him to incorporate. But that seems to have dropped out, right? That dropped out. We acknowledge that he can he can incorporate documents that have previously been submitted and whatnot. EPA makes no distinctions whether the words come from the petitioner himself or some other entity or agency that he incorporates by reference. In the end, it's simply that he didn't show that there was a violation of the final permit. There's nothing about the final permit that violated any provision of the Clean Air Act, even if you just look at the aggregation issue or you look at how aggregation might affect other aspects or requirements of the Clean Air Act. Right. It was it was both the failure to demonstrate unreasonableness as to aggregation and the absence of. Let's talk about about unreasonableness for a minute. Where does where would somebody know where could somebody look to determine that that if they're going to demonstrate that the state's proposed permit is a violation of the Clean Air Act, they need to also show that it's unreasonable? They would look to first the statutory scheme of the Clean Air Act, which is federal state partnership, that EPA doesn't just roll over state's decisions without some sort of basis. Now, Mr. McClaren isn't a lawyer, correct? He's not. He's represented by counsel, but he's not a lawyer. He's an engineer. Well, he's not a lawyer. When you look at these statutes, can't make heads or tails out of them. The Clean Air Act has been described as a morass of legal provisions. But to get back to the point of unreasonableness, you have. Before we leave that, the statute itself says that the administrator shall include in regulations under this subchapter provisions to implement this paragraph regarding the objections. So if it's not in a regulation, how can it be enforced under the statute if the statute specifically says that implementing regulations are to be promulgated? An EPA has promulgated regulations. They're in Part 70 of 40 CFR, and they talk about the procedures for getting the petition to the EPA, when it has to receive it. Does it include the concept of demonstrating unreasonableness of the State permitting decision? It parrots the statute on that point. It sticks to the statute's terms there. Right. So then how would someone know, as Judge Pius inquired, that the obligation extended to showing the unreasonableness of the State's decision? Because it flows logically from the Clean Air Act. It flows logically from the fact that EPA must and does give leeway to State permitting authorities where the Act itself grants them discretion. This was the case that came out of this court and affirmed by the Supreme Court, Alaska versus the EPA. In that case, you had the EPA halting a permit that Alaska issued. And what it's grounds for halting that permit was that Alaska made an unreasonable, best available control technology decision. If we disagree with you on that point, do you lose? We don't lose because there still was no, you still look to, and this is the point you made, the petition is still deficient because it stops at what occurred previously in the permit process at ABEC. For example, he goes at length about why the prior draft complied with the Clean Air Act, but as to the final permit, and that's the permit that he must, according to the plain terms of the statute, focus on, as to the final permit, he simply asserts that it's at variance with EPA's own guidance. And any reasonable plain meaning of demonstrates to the administrator, you would go beyond a statement like that and give reasons why what the State did violated the Clean Air Act. And then we ask, when it comes to us, in a petition for review, under the EPA, whether or not that decision that the EPA rendered was arbitrary. Correct. Whether EPA had a grounds to not be convinced by the petition. Right. And unless the Court has any other points, I just want to sum and brief that we're asking for Chevron deference to EPA's interpretation of demonstrates. We're asking that the Court recognize the deficiency of the petition, and we're asking that the Court give importance to the Federal-State partnership that EPA is dealing with here. Thank you. Thank you. So as I understand the EPA's argument on page 79 of the record, under Heading 1, Mr. McLaren's explaining that the permit violates the Clean Air Act because it doesn't aggregate. Their basic argument is that, as you pointed out, Your Honor, a non-lawyer did not cite to the permit provision in which that non-aggregation occurs, that since there's no regulation that requires it, that seems completely unresonable. As to Alaska D.C., the reply brief explains that Alaska D.C., and by that I mean the Supreme Court case, talked about a statutory provision, 113 A.D., that was discretionary. It said meh. And 505B2, the provision at issue here, is mandatory. And so it was appropriate for EPA to only take enforcement action, which it has enforcement discretion, if there was an unreasonable decision. But here, the issue is that EPA had a mandatory duty. And so it's not really Chevron about demonstrate. It's Chevron about the rest of that sentence, about what the petitioner needs to demonstrate, and the language is clear. And so it would be a Chevron Step 1. Okay. Thank you. Thank you. We appreciate your arguments. The matter is submitted.
judges: Paez, Rawlinson, Collins